All right, we're going to go on to case 18-12-16. United States v. Buncich. Good morning. Good morning, your honor. May it please the court, my name is Carrie Connor. I'm here today on behalf of John Buncich, the defendant appellant. As we outline in our briefs, there's error in this case that permeated every aspect of every conviction that ultimately was delivered by the jury. This case started out with a conviction, when we filed the appeal, conviction on six different counts. One through five of those counts, alleged honest services wire fraud. The final count is a 666 bribery scheme. The government has conceded that no reasonable jury could in fact have convicted Mr. Buncich of counts one through three. Ms. Connor, if we find that there's insufficient evidence for a rational jury to convict on counts four and five, what happens with regard to count six, the bribery count? Well, your honor, the overall case, I believe actually, even if the court were to affirm four and five, there's sufficient evidence of prejudice that has permeated even count six in this case. But was that argued below? I beg your pardon, your honor? Was that argued? Well, I did argue, your honor, in addressing the issue of the 404B evidence, that in fact, that aspect, that introduction of evidence, in fact, permeated all aspects. We did not know that the government was going to concede until our reply brief, but we clearly addressed the issue that in fact, the fact that the government agrees that there is no evidence upon which a jury could have reasonably convicted Mr. Buncich on counts one through three should also be considered by this court in terms of the prejudice that arises out of error in the court. And as we point out, and I do think it's important not to just move on from counts one and three, the government has conceded in this case that there was no evidence of the wire frauds in terms of the reserve funds that were introduced to the jury. There simply were none. There simply were no reserve funds, transfer funds ever introduced to this jury. But what I think is more important than that is that in fact, counts one through three are a direct violation of the Supreme Court's ruling and the Seventh Circuit's ruling regarding bona fide salaries earned during the normal course of employment being used as a basis for honest services fraud. And Skillings tells us that from the get-go, those three counts should never have been brought. Did Buncich move before trial to dismiss the first three counts on the ground that Skilling did not allow an honest services case to be based on payroll alone? No, Your Honor. Why not? I was not the trial counsel, Your Honor. Well, that's why. And Your Honor, I think the flip side of that is why did the government bring three counts knowing that the Supreme Court has already said this is an illegitimate basis for conviction? But what the defense did do, Your Honor, is in terms of the evidence, in terms of sufficiency of evidence, is they did challenge those three counts. And the phrase that they used, I believe, was that it was too far removed from the actual allegations in the case. So it was inartful. However, the defense did in fact make an objection to the sufficiency of evidence argument. So let's, we have before us a judgment of criminal conviction with six counts. Yes. First five, and all sentences run concurrent. First five counts, 188 months per count. Sixth count, bribery, 120 months. Is your argument that because of the confession of error on the first three, that somehow that evidence infected the sixth count, and therefore that conviction should also be vacated? Yes, I believe that it did, but I have a separate argument entirely that addresses the sixth count, and that is the 404B evidence. So we are not simply relying on the newfound concession that counts one through three were adjudicated by a jury without a reasonable basis to do so. Did you raise a section 404B objection to the chart, or did counsel, I should say, raise a section 404B objection to the chart, or to Agent Hadigan's testimony? And if so, where in the record will we find that objection preserved? Yes, Your Honor. Early before trial began, the defense filed a written motion looking to exclude the evidence of the $58,100. That was a written motion. The court then orally heard that motion pre-trial. I'm sorry, the court deferred that motion until it was time for the evidence to actually be heard. But what the defense did is they raised it under 401, 402, and 403. They did not at that time raise 404B. However, they had filed a request for notice of 404B evidence, and the court had granted that. The government never filed a notice of 404B evidence. So what happened initially was an attempt by the government to use evidence of that account, the $58,100, as evidence of the case. Thus, what ultimately happened is initially the court, the district court, very specifically excluded the evidence. They said, the judge said, it can't possibly be admitted that the accounts were too remote in time, couldn't possibly bear any relevance, the amounts varied widely, danger of misleading the jury, and unfair prejudice. The judge cited all of that at Volume 6, page 1029. We also have that in our appendix at page 25. What ultimately happened is after some persuasion by the government, the court changed its ruling slightly and allowed for a very limited introduction of evidence based on those deposits that could reasonably correspond to the alleged cash bribes. Do you agree that we're reviewing that ruling under plain error? No, because that ruling was very clearly objected to throughout the proceedings, as well as in the defendant's filings before the court under 401, 402, and 403. It's the third rendition of the government's desire to admit this evidence, and the court's granting it, and that occurred at page 2261 and page 2262. That's when at rebuttal, the government very specifically argued that, in fact, they believe that the evidence showed that Mr. Bunches had been involved in other illegal activity. At that point, the district court reversed itself and allowed the introduction through testimony of the agent, as well as the agent to testify not only that these amounts of money had not been declared on taxes, but also that he believed that they were from an illegal and illegitimate source. Was that, and I'm on pages 29 to 30 of the appendix, that reversal, was that objected to? Yes, it was objected to, but to be honest, no one said the phrase 404B evidence. But again, at the time that that was allowed in, to be fair to the defendants, they had never actually been noticed a 404B evidence, which the government had an obligation to do, not only under the rule, but under the court's pretrial ruling. But what was very clear is there are objections across the board. The only thing is the phrase 404B never comes in. Also, the government offers no non-propensity basis for the introduction of the evidence. And just to backtrack, the totality of cash alleged bribes is $26,000. The government showed evidence of approaching $12,000 in cash being deposited into Bunches Booster's account. So that left approximately $14,000 unaccounted for. Even if the $58,100 in this other private account could in some part be determined to be related to the $14,000, clearly, clearly the totality of the money which was allowed in and discussed over the objection of the defendants well exceeded any possibility that the monies came from the bribes as alleged in the indictment. Now, the government suggested, well, it could have been other bribes. But if we look to the record, there's absolutely no evidence of other bribes. Many, many of the tow operators testified. The tow operators said there were no bribes. In fact, it's questionable whether the tow operators ever even felt that they were required to buy tickets of any kind, most of those transactions being in checks. However, what happened here is the court allowed the totality of that joint account. I cannot emphasize enough, this was not Mr. Bunches' sole held account. It was held jointly with his son, Johnny Bunchage. The government actually elicits that from the agent when he's on the stand. There is no evidence in the record of the source of the deposits in this account in its entirety, nor, I'm sorry, and we don't even know who deposited those amounts into the account. What we have is Bunches seems to have testified he was not taking bribes. He had no income other than his job in Social Security. Why would it be improper to allow the government to impeach that testimony with evidence that there was a large unexplained influx of cash? I understand that it was a joint account. But the obvious answer then is to have the other account holder testify that those deposits were his. Why wouldn't the government be allowed to at least imply that large influxes of unexplained cash can be explained by bribery? Your Honor, there's no evidence of any alleged bribes beyond those indicated in the indictment. The government chose to draft a very specific indictment pursuing very specific alleged bribes. It isn't possible that the $58,100 related to all of those bribes because that amount of money far exceeds it. It's the government's obligation, whether we look at relevancy and prejudicial value under 101, 102, or, I'm sorry, 401, 402, and 403, to initially prove relevancy. They have to prove that this evidence is evidence of the crime being charged. There is no evidence of that. It's simply an account that's held by two separate people where there are cash deposits. There's absolutely no evidence of any illegality at all. And so it would be wrong to transfer that burden of proving relevancy to the defendant to prove that, in fact, it's not really relevant. That is the government's burden. But once it's clear that this is evidence of other illegal activity based on the government's assessment, it is the government's obligation to notice under 404B and to provide a viable basis for introduction that is a non-propensity basis. Not only did they not do that in this case, the government counsel at page, at volume 12, page 2261 and 2262 actually revealed the basis of his purpose being, in fact, to prove other criminal activity. Say some time. No. Okay. Thank you. All right. Mr. Holler. Thank you. Good morning, Your Honors, and may it please the court. Sufficient evidence supports Buntz's convictions on counts four and five, and Exhibit 49-2 was properly admitted in this case. I want to ask you something. You concede error on the first three counts only because of what you think is insufficient evidence, but there is a significant legal flaw in those counts as well. How could any of those counts be squared with skilling? Well, based on the evidence as it came in and the evidence that we introduced, I don't know that they could be squared with skilling, but I do believe that there was paid solely based on bribes that were given by the defendants. I think there was information that came in that Mr. Downs may have been engaging in activity, political activity, much of his time. But in terms of the specific evidence that we introduced, Your Honor, we have already conceded we did not introduce sufficient evidence. We've conceded that point, and those counts do need to be vacated. What I'm trying to do is determine whether there was prejudicial evidence that came in those three counts that contribute to the entire verdict. Oh, I don't think there is, Your Honor, and let me explain why. There are three questions here. Was there a scheme to engage in honest services fraud? Was there intent to defraud? And then was there a mailing and furtherance of the scheme? And all of the concerns that the court has goes only to the questions of those mailings or wires in count three. So apply that same logic and that same analysis now to counts four and five. There's no evidence that came in that would not otherwise have come in in this particular case. Well, what is, for instance, the best evidence on count five? How did Bunchich personally benefit from a check that was written to and deposited in the account of the Lake County Democratic Committee? What's the evidence that this check was something other than a routine campaign contribution? In other words, you know, where's the evidence of a quid pro quo for that check? Judge Rupner, any campaign contribution can be a quid pro quo bribe. That's what this court has said repeatedly. That's what the court said in McCormick. The question is... But where's the evidence? Oh, the evidence, Your Honor, it comes clearly through the transcripts, through Exhibit 12, through Exhibit 13. What happens at the time that these payments are given? If the payment changed how Bunchich did his job, if it was a swap of an official act for a private payment, it doesn't matter whether the money was being given to Bunchich personally, to Bunchich's campaign, to the Democratic Party, or to the Little Sisters of the Poor. And the evidence here is that that particular payment was being made in exchange for CSA towing getting territory from S&S. The down says that the sheriff is real interested in these particular tickets. There's all kinds of conversations and discussions leading up to it. And then what does he say? He says he will change the boundaries. He will transfer the heavies to S&S, from S&S, excuse me, to SARMAC. That's at Exhibit 13T at 4. So the jury can look at that and can infer together that the sheriff is interested in these payments and that these payments and the other payments that are continually being made, some in cash and some in checks, are being made as a result and as an exchange for those of that movement. And then what happens after the election, after some time has passed? Boom. We make the change. We move the boundary from Broadway to Kline Avenue, and suddenly S&S gets a lot fewer of these trucks because all of this truck traffic to the mills, all of those trucks that break down are now going to SARMAC. So the jury, in its discretion, could make that rational inference. That's the question is, is there sufficient evidence in the record? And then, looping back to your original question, does anything about any of the problems with Count 1 through 3 about whether those payroll records that weren't even introduced, would that somehow spill over? The answer is no. The jury problem with that case relates solely to the third element, to the wiring, and that has nothing to do with the question of whether these wirings furthered the scheme. The answer is that they did, or at minimum, a rational jury could sufficiently conclude that they did. The same follows for Count 4, which is a deposit to Buntage's own campaign, and there's plenty of evidence in the record that suggests that giving a certain amount of money, some of which was going to be given through the campaign and some of which was going to be or, excuse me, in cash, had to be made and had to be paid by the tow truck drivers if they wanted to maintain their towing territory. Count 5 also makes reference to two cash payments of $500, correct? It does. The wiring, of course, is the checks that are being wired through the deposits, but in both of those instances, it wasn't just give me the campaign money, it was give me the campaign check and then cash was given as well. Now, there was testimony as to Count 5 that Downs is saying, you know, you don't have to give me a huge amount of money, you just have to give me some money, you just have to buy some of these tickets, but the extra $500 was given at that same point in time, but I think there was expectation and one can read from the discussion, you know, he's real interested in these tickets, it's don't got to be a big buy, but if you say it don't got to be a big buy, it implies it's got to be a buy. You got to buy some of these tickets, you can't just say, well, okay, I'm not buying any, and that's what the jury could rationally infer. You had to buy some of these tickets in order to maintain your place, and in particular with Count 5, because of the way those conversations are going, this is a bigger buy and this is a buy that then ultimately leads to the transfer of territory. The money is, the check is actually being given by Mr. Jurgensen, but it's clear at that time that he's at least playing off that he's partners with Mr. Zarmack, they're together at the same time when this deal is set, and then Mr. Jurgensen makes the payment later. The jury could rationally make that inference, and they did rationally make that inference, and there's no reason to think that there's any spillover here that would affect Counts 4 or 5, or many of the errors in Counts 1 through 3. Why was Agent Hadigan allowed to give opinion testimony on the ultimate question for the jury, namely whether the cash deposits were from an illegal source? What was the factual basis for that opinion? Didn't he concede that he simply did not know the source of those deposits, and so wasn't he just speculating that that bunchage was engaged in additional criminal activity? I am really having a difficult time seeing a non-propensity purpose for that particular testimony, that the source of the funds was illegal activity. Well, as to the specifics of that one specific statement by Agent Hadigan, Your Honor, I think that did come out rather anarchically, and I'm not sure that's the way it should have come out. The defendant essentially, frankly, I think opened the door to that through his repeated questioning on cross-examination of asking Agent Hadigan, well, you don't have any evidence that this is illegal income to you. You're not making any insinuation that this is illegal, are you? And so on redirect, the government essentially was trying to bring out, well, what evidence do you have to support the conclusion that this is fraud money? And the answer is, because there's no other taxable source of income that Mr. Bunsich has shown to us, and because he's receiving all this money, and because it's not put on your tax return. Now, in the midst of that, it did come out that my opinion is that this did not come from a legal source. But I don't think that that is, that certainly was not the focus or the crux of the testimony. To the extent that that one limited statement is an error, I do not think that when it wasn't really even objected to in the fashion that it's being objected to now on appeal, and in the context of a 14-day trial, I don't think that that is in any way reversible error. As to the- Why was it necessary to establish a motive for bribery? I would think the motive for bribery is obvious in every case. To obtain money for personal use. How did evidence of cash deposits, other than those traced bribes, prove any element of the case? Well, I think it did establish motive as Cardenia and as a whole legion of these cases except, but I think that if you look at the government's argument, the main purpose of this introduction of this evidence, and really the reason the district court let this in was to impeach the defendant's testimony. That's why the district court initially excluded it and then later included it. The defendant initially came up in his pleading at docket entry 131 and said, look, we're not contesting that the defendant got the cash that the government says he got, we're saying it's campaign contributions, and it doesn't really matter where the money went. And then Mr. Buntzich testifies for days on end and says, some of that bribe money, the specific bribes you saw me get on tape, those I got, but the cash that Downs got, he never gave it to me. There's this one instance where he leans into the seat on the video, but you can't actually see him taking the cash. Well, I didn't take any cash then. And then he testifies at length to what he did with the cash. Well, some of this cash I just spent. I spent it on campaign purposes. And some of this cash I did deposit into my campaign account. And some of this cash I deposited into my personal account. Well, at that point, the government has every right to come in and say, members of the jury, let's look at the evidence. Let's see if that actually pans out. And how do we do that? Let's look at the cash that went into his personal account. There is cash going into his personal account. Now, does it match? On page 30 of the appendix, Judge Moody is going through his analysis. And he does a relevance analysis. And he does under 401. And he does a prejudice analysis under 403. But 404b2 gives nine permitted uses, which require notice for this type of evidence. I'm not going to go through all of them. Does he ever do an analysis with regard to which of those nine, or which among those nine, this evidence is supposed to go to? No, he does not, Your Honor. But two points about that. First of all, the defendant never raised a 404b objection. And this evidence actually came in at page 2280 of the transcript. And the court specifically says, any objection? Yes, Your Honor. Relevancy and prejudice. 402, 403. No 404 objection. So at best, we're on plain error standard. As far as this court has said, 404b evidence can come in. Evidence of unexplained wealth can come in for evidence of motive, personal gain. It also, I think, can come in here as evidence of plan. This wasn't a mistake that this money ended up in his personal account. This was not campaign contributions, right? His testimony as to the very last bribe, the last $7,500 bribe, the largest bribe is. Well, that never ended up in my campaign account, because I ended up taking it as a personal loan, or as a loan back from the campaign. I took money back from the campaign account that I had loaned earlier, and I just forgot to document it. So that's why it ended up in my personal account. So again, it impeaches that testimony. It shows this plan. It shows this isn't a mistake. And I understand that, if that was the argument. Defendant's, appellant's argument here, though, is that it requires notice of, notice in a criminal case under 404b-2. And my familiarity would be that the government would bring a 404b notice in advance of trial, if it was going to use that kind of evidence. We know the government was going to use that kind of evidence, because this exhibit was prepared beforehand. They tried to get it in. Judge Moody declined. It was only after, apparently, a 14-day trial, only after the defendant takes the stand, that then the government makes the motion again, and seeks to admit the exhibit, changes the exhibit by removing a column, correct? Yes, but I want to back up, I guess, a little bit, Your Honor. First of all, the defendant is trying to narrow this indictment in a way that he can't narrow the indictment, okay? Defendant Appendix 5 shows what the indictment charged. The indictment alleged that the government obtained, that the defendant obtained cash from towing companies on the sheriff's tow list. There's 12 companies on the sheriff's tow list. This was not an indictment, especially Count 5. Count 6 was limited to the very specific bribes by Jergensen and Zarmack. I agree with that. Counts 1 through 5 were not. Counts 4 and 5 that are now at issue were not. There was a general scheme to obtain bribes from all the tow truck companies. There was evidence that the largest tow truck driver from Steve's Towing paid a $2,500 cash bribe on tape to Mr. Downs. There were claims that other tow truck drivers that were made in the government's case, that other tow truck drivers were taking those bribes. That was always part of the case. In fact, if it wasn't part of the case, then what explains the defendant calling four tow truck drivers to say, hey, we never paid bribes? If it's really the case that this was just about these two tow truck drivers, then calling those other tow truck drivers, that would be impermissible propensity evidence to say, well, you know, I didn't rob the bank on this day, so I couldn't rob the bank on this day. I didn't commit fraud against this defendant. I couldn't have committed fraud on this defendant. This case was always broader than that. This case was always about, did all of these tow truck drivers take bribes? And keep in mind, all these tow truck drivers were still towing for the sheriff, who was still the sheriff when he was sitting there on trial in the district court. So they all had motives to testify the way they did. While we have you up there, let me ask you a question about sentencing. Is the government asking for resentencing on all three remaining counts, or just four and five? We believe, Your Honor, that this court's precedence would suggest that if the court remands, it's open for a full resentencing, and four, five, and six would all be affirmed, should all be affirmed by this court, but that the district court should be free to resentence on counts four through six as it wishes. So I just want to make that clear to the court that the government's position is that this isn't 404B evidence at all. That this was relevant, admissible evidence. It was relevant to impeach Buntzich's testimony. It was relevant to impeach the tow truck driver's testimony. And it was relevant to show Mr. Buntzich's intent, as well as his plan. So for all of those reasons, I would say- So it isn't 404B, even though it was an inappropriate conclusion for the agent to draw? I think that the evidence, the admission of the case- It went to the ultimate issue of his guilt. Well, the ultimate question in this case, Your Honor, was, was the defendant taking bribes? The ultimate question in this case was when this defendant was taking envelopes on video of cash and dumping them in his pocket, was he taking those as bribes or were they campaign contributions? That was the ultimate issue in this case. And the defendant said, when I put that money in my pocket, it was a campaign contribution. I was going to spend it as a campaign money, or it was money that I had loaned money to the campaign and it was coming back. And that's the question we had to answer. And that, I believe, is the question that the jury answered. And I don't believe that any error in Agent Hadigan's one question should cause this court to reverse that case. Listen, it was based on speculation. As we now realize, the government has admitted, it had no evidence regarding the source of specific cash deposits. And it was propensity evidence. It's troubling. Well, I don't believe, like I said, Your Honor, I think at best on that particular issue, we are on plain error. And I think that all of these facts were specifically for the jury. The jury completely was told. I mean, this was cross-examined about. The only reason you're stating that is because you don't know what the source of that income was. You have no other basis for that statement other than that you don't know what the source of that income was. That's the only thing you're basing that testimony on. The jury knew it. And I think the jury was smart enough to figure out what that meant. Well, let me tell you this. The jury was smart enough, it seems to me, to have figured out that there was a problem with the evidence in counts one, two, and three. And they convicted anyway. And that would suggest that the government was successful in generally dirtying him up with inappropriate evidence, wouldn't it? I do not agree with that characterization, Your Honor. I don't think that that's appropriate. At best, the court has pointed to one statement, one opinion statement in a 14-day trial that is potentially error. Yeah, well, there's no one more important than that agent that gets on the stand. And we all know that. Boy, do I remember the juries used to, you know, lean forward in the jury box to hear every word. In my view, Your Honor, in this case, the jury leaned forward the most when the defendant was leaning forward as well into the car to take the cash. Okay. Thank you. Thank you. All right. No. That was two. How many? That was two over. Yeah, thank you. Two over. Please add two more. Oh, we're nothing if not fair. Thank you, Your Honor. I think it's important to point out in counts one through three that the jury sent a note to the court asking where the evidence was. I just pointed it out. And then a second note to the court asking what the definition of the reserve transfer funds were. Even after that clear statement that the jury could not find the evidence, they still convicted. And considering that there is no evidence in the record, that the jury made a statement recognizing that and that they still convicted, and that the government has conceded that no reasonable jury could have found sufficient evidence, obviously, there is impact on the entire case about this 404B evidence. It's very unfair of the government to now claim plain error when the government did not notice the defendants of their intention to use this evidence as 404B evidence. When we look at the record, clearly, the court minimized what it had allowed by the second ruling to evidence that would have been arguably related directly to the alleged bribes. But it's the third change in the order with no notice under 404B that ultimately is the most damaging. And when the agent, of course, testifies that, in fact, he believes that the defendant, in essence, is guilty and doing other criminal activity, it's also what does not meet due process to say, well, the defense had the opportunity to cross-examine the agent. Once the IRS agent, the expert in financial transactions, tells that jury that he believes not only that Mr. Bunches is guilty, but that he has been involved in other illegal activity, the jury and its deliberations in the future are completely and utterly tainted. I would add, on count four, the check that Mr. Jergensen gave to Mr. Downs, not to Bunches, was delivered in April of 2014. Mr. Bunches, in a conversation he has found at 21T and 21V, indicates that he does not even know who Mr. Jergensen is as of March of 2015. The government cannot present any evidence of significant changes in the TOE schedule until well after that contribution. The October 2014 contribution, as the court has indicated in its statements, is very far removed to Mr. Bunches. That goes to the Central Committee, doesn't even go to Mr. Bunches, and both of those checks are accounted for and the indictment does indicate that, in fact, specifically counts four and five involve those checks, which Mr. Jergensen paid, not some other TOE driver. Thank you. All right, thank you both. Thank you very much. Were you appointed? I was not. You were not. Okay. All right. The case will be taken under advice.